UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COACH, INC., and
COACH SERVICES, INC.,

        Plaintiffs,

vs.

CHOUMAN'S ASSOCIATION, INC.,
d/b/a WIXOM FUEL STOP,
KAMAL CHOUMANE, and
JOHN DOES 1-10,

        Defendants.
_____/

Civil Action No.
11-cv-15665

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER**
**GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT (Dkt. No. 14)**

Plaintiffs Coach, Inc. and Coach Services, Inc. ("Plaintiffs") filed the Complaint in this matter on December 28, 2011, alleging trademark violations under the Lanham Act, 15 U.S.C. §§ 1114, 1116, 1117, 1125(a) and (c), copyright infringement under the United States Copyright Act, 17 U.S.C. § 501, *et seq.*, violations of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903, and common law unfair competition and unjust enrichment claims. (Dkt. No. 1.) The named Defendants are Chouman's Association, Inc., Kamal Choumane, and John Does 1-10 ("Defendants").

Certificates of Service reflecting service on Defendants Chouman's Association, Inc., and Kamal Choumane, were filed on January 23, 2012. (Dkt. Nos. 7 and 8.) The certificates showed that Defendant Kamal Choumane was personally served with the Summons and Complaint on

1

January 10, 2012, at 29330 Wixom Road in Wixom, Michigan. (Dkt. No. 7.) Defendant Kamal Choumane was also served on behalf of Defendant Chouman's Association, Inc., on the same date at the same address. (Dkt. No. 8.) Defendants have not filed a notice of appearance or any responsive pleading in this matter.

On March 12, 2012, Plaintiffs requested and received defaults against Defendants. (Dkt. Nos. 10, 11, 12 and 13.) On June 8, 2012, Plaintiffs filed the instant Motion for Entry of Default Judgment. (Dkt. No. 14.) Defendants did not file a response. The Court held a hearing on October 31, 2012. Defendants did not appear at the hearing.

For the reasons stated below, the Court will GRANT Plaintiffs' Motion.

## I. BACKGROUND

A default has been entered in this case and all Plaintiffs' well-pleaded allegations are deemed admitted by Defendants. *Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 846 (E.D. Mich. 2006).

Plaintiffs are engaged in the marketing and sale of leather and mixed material products, including purses and handbags. Plaintiffs only sell their products through their own specialty retail stores, department stores, catalogs, and the website www.coach.com. Plaintiffs' products include a variety of trademarks and trade dresses, which are registered and have acquired incontestable status.[1] (Compl. ¶¶ 14, 15.) Plaintiffs have successfully marketed their products worldwide, and their annual global sales exceed $3 billion. (Compl. ¶ 13.) Plaintiffs' marks are "famous marks"

---

[1] Under 15 U.S.C. § 1065, a valid, registered trademark that is used continuously for five consecutive years after registration, which has not been challenged, is deemed incontestable. *See also Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1187 n. 1 (6th Cir. 1988) (noting that an incontestable mark is assumed to be totally valid unless one of five defenses has been raised regarding its validity).

2

pursuant to 15 U.S.C. § 1125(c)(1).[2] (Compl. ¶ 18.) Plaintiffs also hold registered copyrights for some of their marks. (Compl. ¶¶ 24-26.)

Defendant Kamal Choumane, a Michigan resident, is the President and controlling shareholder of Defendant Chouman's Associates, Inc. Defendants own and operate a retail establishment in Wixom, Michigan, known as the Wixom Fuel Stop. Defendants' store is not a licensed retailer of Coach products.

On November 23, 2011, the Department of Homeland Security contacted Plaintiffs and informed them that suspected counterfeit Coach items were being offered for sale at Defendants' store. A Coach representative thereafter went to Defendants' store and observed handbags, scarves, and wallets displayed for sale that were purportedly manufactured by Coach, which bore various Coach trademarks. (Compl. ¶ 28(b).) The items were inspected and determined to be counterfeit. In addition to the counterfeit items on display, the Coach representative discovered several dozen more counterfeit handbags, wallets, and scarves, in an upstairs office of Defendants' store.

Prior to the entry of the defaults in this matter, Plaintiffs engaged Defendants in settlement negotiations. Plaintiffs state in their brief that preliminary discovery between the parties did occur, even though Defendants never filed an appearance, but Defendants' discovery responses were "half-hearted" and unsatisfactory, and negotiations between the parties broke down. (Pls.' Mot. Br. at 4.) Defendants did not appear at the October 31, 2012 hearing on this matter.

---

[2] "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). The owner of a famous mark is entitled to specific remedies in a trademark infringement action, set forth under 15 U.S.C. § 1125(c)(5).

## II. LEGAL STANDARD

Where damages are for an uncertain amount, a party must apply to the Court for a default judgment. Entry of default judgment by the Court is governed by Federal Rule of Civil Procedure 55(b)(2). The rule states that, in entering a default judgment:

> [t]he court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

Under Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

## III. ANALYSIS

While Defendants' default admits their liability, "the allegations in the complaint with respect to the amount of the damages are not deemed true." *Vesligaj v. Peterson*, 331 Fed. Appx. 351, 355 (6th Cir. 2009). Thus, an entry of default establishes only Defendants' "liability and the amount of damages must be proven." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (citation omitted). Plaintiffs seek $8,000,000 in statutory damages, $8,730 in attorney's fees, and $231.75 in investigative costs.

### A. Statutory Damages

Plaintiffs admit that, because Defendants refuse to answer Plaintiffs' discovery requests, Plaintiffs are unable to determine actual damages in terms of Defendants' profits and damages to Plaintiffs' reputation. (Pls.' Mot. Br. at 3.) Instead, Plaintiffs seek statutory damages pursuant to 15 U.S.C. § 1117(c), which provides that "the plaintiff may elect, at any time before final judgment

4

is rendered by the trial court, to recover, instead of actual damages and profits . . ., an award of statutory damages . . . ." Under the statute, Plaintiffs are entitled to "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just . . . ." 15 U.S.C. § 1117(c)(1). Where the use of the counterfeit mark was willful, Plaintiff may receive "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

Plaintiffs have attached to their Motion the Declaration of Dayanara Perez, the Intellectual Property Coordinator at Plaintiff Coach, Inc. (Pls.' Mot., Ex. 2, Perez Decl. ¶ 2.) Ms. Perez states that "approximately seventy-five counterfeit 'Coach' items were observed and seized from Wixom Fuel Stop." (Perez Decl. ¶ 15.) The Perez Declaration also includes photographs of some of the infringing products, including the display that was used in the Wixom Fuel Stop. (Perez Decl. 16.)

Plaintiffs contend that Defendants can be liable for up to $2,000,000 per counterfeit mark per good, because the default entered in this matter establishes that Defendants' infringement was willful. Plaintiffs argue that Defendants counterfeited 10 different trademarks on three types of goods, and are therefore potentially liable for up to $26,000,000 in statutory damages.

Plaintiffs assert that $8,000,000 is reasonable because it is within the allowable statutory damages. Plaintiffs claim that this amount would also send a strong message of deterrence to potential infringers, and would adequately compensate Plaintiffs for their damages.

Section 1117(c) was added to the Lanham Act because, under previous versions of the law, a civil litigant may not have been able to recover "if a sophisticated, large-scale counterfeiter has hidden or destroyed information about his counterfeiting." S. Rep. 104-177, at 10 (1995). Thus, statutory damages filled a "gap" in the law, where proving actual damages was difficult due to an

infringer's deceptive record-keeping activities. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 110 (2d Cir. 2012). The amounts set forth under the statute "are appropriate given the extent of damage done to business goodwill by infringement of trademarks." S. Rep. 104-177, at 10.

Ms. Perez's Declaration states that the seized products bore 10 different Coach trademarks. (Perez Decl. ¶ 16.) Plaintiffs' $8,000,000 figure therefore clearly does not exceed the $2,000,000 limitation per mark per product for willful violations set forth under § 1117(c)(2). Nevertheless, the Court finds that, given the evidence presented in the Perez Declaration, $1,500,000 in statutory damages constitutes a just award in this matter. This amount is supported by the evidence presented to the Court, and it adequately accounts for Defendants' profits and Plaintiffs' reputational damages. Furthermore, this amount is in keeping with similar cases. *See e.g., Coach, Inc. v. Da Hook Up Ltd.*, No. 10-11710 (E.D. Mich. July 11, 2011) (awarding statutory damages of $1,200,000).

Defendant Kamal Choumane may be held individually liable for Plaintiffs' Lanham Act claims. "It is well-established law that employees and corporate officers can be held individually liable under the Lanham Act when the employee or corporate officer personally takes part in the infringing activity or directs others to do so." *Days Inn Worldwide, Inc. v. Adrian Motel Co., LLC*, No. 07-13523, 2009 WL 3199882, at *11 (E.D. Mich. Sept. 30, 2009) (Zatkoff, J.); *see also Coach, Inc. v. Younes Corp., Inc.*, No. 11-11559, 2012 WL 4757925, at *2 (E.D. Mich. Oct. 5, 2012) (Cook, J.); *Hair Assocs., Inc. v. Nat'l Hair Replacement Servs. Inc.*, 987 F. Supp. 569, 590 (W.D. Mich. 1997) (holding that "a corporate officer's active participation in infringing activity is sufficient to subject him or her to joint and several liability for trademark infringement with the corporation."). "Even a lack of participation in the infringement will not insulate a corporate officer from liability

where he had the right and ability to supervise the infringing activity and also had a direct financial interest in such activities." *Days Inn Worldwide, supra* (citation omitted).

Plaintiffs allege that Defendant Kamal Choumane is the President and controlling shareholder of Defendant Chouman's Associates, Inc. (Compl. ¶ 8), and that he acted "knowingly and intentionally or with reckless disregard or willful blindness to Coach's rights, or with bad faith, for the purpose of trading on the goodwill and reputation of the Coach Marks and Coach products." (Compl. ¶ 31.) These allegations are sufficient to show that Defendant Choumane actively participated in the infringing activity, and/or "had the right and ability to supervise the infringing activity and also had a direct financial interest in such activities." *Days Inn Worldwide, supra*. Plaintiff Choumane is thus individually liable under the Lanham Act.

### B. Attorney's Fees and Costs

Plaintiffs seek attorney's fees for Defendants' trademark infringement, pursuant to 15 U.S.C. § 1117, or for Defendants' copyright infringement under 17 U.S.C. § 505 (providing that "the court in its discretion may allow the recovery of full costs by or against any party[,]" and allowing "a reasonable attorney's fee to the prevailing party as part of the costs."). Where a defendant willfully infringes copyrights and trademarks, an award of attorney's fees is appropriate. *See Microsoft Corp. v. Compusource Distributors, Inc.*, 115 F. Supp. 2d 800, 812 (E.D. Mich. 2000).

Defendants have failed to answer the complaint or otherwise enter any pleading in this matter. Plaintiffs have requested and received a default. Defendants are thus deemed to have admitted the willful violations alleged in the Complaint. *See Ford Motor Co.*, 441 F. Supp. 2d at 846. An award of attorney's fees is therefore warranted.

Plaintiffs claim that their counsel, Warner Norcross & Judd LLP, have accrued approximately

$8,730 in fees, and continue to accrue additional fees. Plaintiffs request that the Court enter default judgment and allow Plaintiffs to seek legal fees and costs after the conclusion of the case. The Court will permit Plaintiffs to recover appropriate attorney's fees.

Plaintiffs also seek investigative costs of $231.75, related to the investigation of the counterfeit items recovered from Defendants' store. (Perez Decl. ¶ 19.) Although they are not specifically provided for under § 1117(c), Courts have awarded investigation fees in similar cases. *See Da Hook Up, supra; see also Fila U.S.A., Inc. v. Run Run Trading Corp.*, No. 95 CV 7144, 1996 WL 271992, at *4 (S.D.N.Y. May 21, 1996). Accordingly, Plaintiffs will be awarded investigative fees in the amount of $231.75.

## IV. CONCLUSION

For the reasons stated above, the Court will:

(1) GRANT Plaintiffs' Motion for Default Judgment, and

(2) ORDER that Plaintiffs are awarded:

    (a) statutory damages in the amount of $1,500,000,

    (b) investigative fees in the amount of $231.75, and

    (c) attorney's fees in an amount to be determined upon submission of Plaintiffs' billable hour statements.

SO ORDERED.

Dated: 12-26-12
Detroit, Michigan

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE